The Honorable Nevin G. Smith Secretary Department of Administration 435 Carlton Building Tallahassee, Florida 32301
Dear Secretary Smith:
This is in response to your request for an opinion on substantially the following question:
 IN THE CASE OF RESIDENT ALIENS WHO ARE NOT CITIZENS, MAY THE LOYALTY OATH REQUIRED BY s 876.05(1), F.S., BE MODIFIED TO REFLECT THAT THE PERSON EXECUTING THE OATH IS A RESIDENT ALIEN RATHER THAN A CITIZEN?
According to your letter the Department of Administration, in performing its periodic post-audit review of personnel files maintained by state employing agencies, routinely checks to determine that the appropriate loyalty oath required by s876.05(1), F.S., is contained in the employees' file jacket. A question has arisen in the performance of the department's post-audit function as to the form of the oath when it is to be taken by resident aliens who are not citizens. You have therefore requested the advice of this office on this matter.
Section 876.05(1), F.S., requires "[a]ll persons who now or hereafter are employed by or who now or hereafter are on the payroll of the state, or any of its departments and agencies, subdivisions, counties, cities, school boards and districts of the free public school system of the state or counties, or institutions of higher learning, and all candidates for public office" to take the oath prescribed therein. The oath is to be taken before a person authorized to take acknowledgments of instruments for public record and is to be filed with the records of the governing official or employing governmental agency prior to the approval of any voucher for the payment of salary, expenses, or other compensation. See, s 876.05(1) and (2), F.S., respectively. Cf., s 92.50, F.S., regarding who may take or administer oaths and acknowledgments required or authorized under the laws of Florida. The form of this oath, as set forth in s876.05(1), F.S., is as follows:
 I, ___, a citizen of the State of Florida and of the United States of America, and being employed by or an officer of — and a recipient of public funds as such employee or officer, do hereby solemnly swear or affirm that I will support the Constitution of the United States and of the State of
 Section 876.05, F.S., originally adopted in 1949 by s 1, Ch. 25046, 1949 Laws of Florida, was revised by the 1983 Legislature to delete those portions of the oath which had been judicially invalidated and eliminated by the state or federal courts. Cf., AGO 82-64; Connell v. Higginbotham, 403 U.S. 207 (1971); Cramp v. Board of Public Instruction of Orange County, 137 So.2d 828 (Fla. 1962).
 Since the United States Supreme Court's decision in Sugarman v. Dougall, 413 U.S. 634 (1973), in which the Court struck down a state statute denying aliens the right to hold positions in the state's competitive service system as violative of the equal protection guarantees of the Fourteenth Amendment, it has been evident that a state may not exclude lawfully admitted resident aliens from all public employment opportunities. See generally, AGO 76-238 and cases cited therein. But see, Hampton v. Mow Sun Wong, 426 U.S. 88, 101 n. 20 (1976) wherein the Court stated that "in Sugarman we merely held that the flat ban on the employment of aliens in positions that had little if any relation to a State's legitimate interests could not withstand scrutiny under the Equal Protection Clause, and we were careful to point out that the holding did not preclude individualized determinations that particular persons could be refused employment on the basis of noncitizenship, or that citizenship could be required as a qualification for appropriately defined classes of positions. . . ." And see, Foley v. Connelie, 435 U.S. 291 (1978) (upholding state statute requiring state troopers to be United States citizens); Ambach v. Norwick, 441 U.S. 68, 73-74 (1979) (state may refuse to employ as elementary and secondary school teachers aliens who are eligible for United States citizenship but fail to seek naturalization); Cabell v. Chavez-Salido, 454 U.S. 432 (1982) (upholding state statute requiring peace officers, including deputy probation officers, to be citizens). The fact that one is not a citizen, however, does not prevent such an individual from swearing in good conscience to support the Constitution. See, In re Griffiths, 413 U.S. 717, 726 n. 18 (1973) ("We find no merit in the contention that only citizens can in good conscience take an oath to support the Constitution"); Hampton v. Mow Sun Wong, supra at 109 ("it is settled that aliens may take an appropriate oath of allegiance"); Cabel v. Chevez-Salido, supra at 462 (dissenting opinion).
State law presently provides that except as expressly provided by law, there shall be no Florida residence requirement for any person as a condition precedent to employment by the state although preference may be given to Florida residents in hiring. See, s 110.105(3), F.S. And see, s 110.105(2), F.S., stating that all appointments, terminations, assignments and maintenance of status, compensation, privileges, and other terms and conditions of employment in state government shall be made without regard to, inter alia, national origin. Cf., s 112.021, F.S., providing that unless expressly provided by law, there is no Florida residence requirement as a condition precedent to employment by a county; and s 112.042, F.S., prohibiting discrimination in county and municipal employment on the basis of, inter alia, national origin. See, generally, s 2, Art. I, State Const., stating that "[a]ll natural persons are equal before the law and have inalienable rights, among which are the right to enjoy and defend life and liberty, to pursue happiness, to be rewarded for industry, and to acquire, possess and protect property; except that the ownership, inheritance, disposition and possession of real property by aliens ineligible for citizenship may be regulated or prohibited by law. . . ."
This office has previously considered the applicability of the loyalty oath prescribed in s 876.05 to noncitizens. In AGO 69-121 this office, after examining the history of the loyalty oath, concluded that a noncitizen who is otherwise eligible for government employment in this state may qualify for employment by taking the oath prescribed in s 876.05 after deleting therefrom and substituting thereon appropriate words for the words "citizen of the State of Florida and of the United States of America." See also, AGO 56-183 wherein this office stated:
 We see no legal reason why an employee of the state or any of its departments or agencies, or of its subdivisions, counties, etc., may not take the oath of allegiance prescribed by making slight changes therein and using in lieu of the term "citizen" the term "resident" or otherwise as the case may be. The purpose of s 876.05 was to insure the loyalty of such employees to Florida and the U.S., and not to require that all such employees be citizens of Florida.
And see, AGO 49-243, July 7, 1949, Biennial Report of the Attorney General, 1949-1950, p. 591-592, stating that the words "a citizen of the State of Florida and of the United States" contained in s876.05 (Ch. 25046, Laws of Florida 1949) are merely "descriptio personas" and not a requirement for public employment; therefore if an employee is not a citizen of this country, he may substitute for the quoted words a statement that he is a citizen of whatever country he may be a citizen. In addition, he might add, if such be the case, that he has applied or intends to apply for citizenship in the United States, or whatever the facts may be. This office, however, was of the opinion that when such noncitizen employee filed an oath changed in the manner set forth therein, it was not unlawful to employ and pay him for his services. Accord, AGO 49-294, July 5, 1949, Biennial Report of the Attorney General, p. 594.
Having reviewed the foregoing Attorney General Opinions, I see no reason to retract from the conclusions reached therein that the matter of citizenship in the form of the oath set forth in s876.05 was intended merely as a description of the person and was not to limit employment to citizens of Florida (or of the United States). Indeed, an attempt to uniformly limit public employment to citizens of the state would be subject to attack on constitutional grounds. While it would be inappropriate for this office to prescribe a revised or alternative oath for a resident alien who is not a citizen, the oath set forth in s 876.05 may be modified to reflect that the person executing the oath is a resident alien and is not a citizen since the purpose of s 876.05
appears to be to insure the loyalty of such employee to the state and the United States and not to require that all such employees be citizens.
Accordingly, it is my opinion until and unless judicially determined otherwise that the loyalty oath in s 876.05 may be modified to reflect that the individual taking the oath is a resident alien and not a citizen of Florida or of the United States.
Sincerely,
Jim Smith Attorney General
Prepared by:
Joslyn Wilson Assistant Attorney General