Marcus Goodman Lyon County Attorney Lyon County Courthouse 430 Commercial Street Emporia, Kansas 66801
Dear Mr. Goodman:
As Lyon County Attorney, you request our opinion regarding whether due process rights of public officials and voters are violated when member district boundaries are changed without public notice being given to the officials and voters. You raise the issue because of a situation that has developed in regard to member district boundaries for the Board of County Commissioners for Lyon County.
According to information provided to us, the Board of County Commissioners for Lyon County determined during a Board meeting in January, 2002, that the commission districts were as compact and equal in population as possible and, therefore, chose to leave the boundary lines unchanged.[1] At that time, Vernon L. McKinzie resided in a precinct that was included in the territory composing the first commissioner district and served on the Board as the commissioner representing that district.[2]
In April, 2002, Mr. McKinzie reviewed maps showing proposed districts for members of the State Legislature and noted that his residence was moved to a new legislative district.[3] A legal notice of district maps was published in the official county newspaper on May 17, 2002.[4] The notice reflected that Precincts 3 and 10 were modified to absorb territory that had been included in Precinct 10A, which was eliminated.[5] A portion of territory that had been included in the first commissioner district was transferred into the third commissioner district.[6] No other notice regarding the precinct boundaries was provided to the Board of County Commissioners.[7]
Mr. McKinzie filed on May 24, 2002, for re-election to the Board of County Commissioners as representing the first commissioner district.[8]
On June 5, 2002, Mr. McKinzie received a voter identification card that showed he was a resident of Precinct 3 rather than Precinct 10 and as such was a resident of the third commissioner district.[9]
County officials met on June 6, 2002, in an attempt to resolve the discrepancy.[10] Staff from the County Clerk's office explained that the lines were drawn to follow the census block boundaries used by the Federal Bureau of the Census.[11] The time at which the precinct lines no longer followed census block boundaries is not clear, but the discrepancy may have occurred as long ago as 1985.[12] Mr. McKinzie withdrew his candidacy on June 7, 2002, so that he could receive a full refund of the filing fee.[13]
In this opinion, we address only whether a change in the member district boundaries under the facts as presented violates any due process rights of the Commissioners and voters of the County.
The Fourteenth Amendment to the Constitution of the United States provides in part that "[n]o State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law. . . ." The Kansas Constitution provides similar protection under Section 1 of the Bill of Rights: "All men are possessed of equal and inalienable natural rights, among which are life, liberty, and the pursuit of happiness." In Leek v. Theis,[14]
the Kansas Supreme Court reviewed the due process rights of a person appointed to public office.
"Due process considerations mandate that when an interest involving life, liberty and property rights protected by the Fourteenth Amendment are implicated, the right to some kind of a prior hearing is paramount.Board of Regents v. Roth, [408 U.S. 564, 569, 570, 33 L.Ed.2d 570,92 S.Ct. 2701 (1972)]; also, Goldberg v. Kelly, 397 U.S. 254,25 L.Ed.2d 287, 90 S.Ct. 1011 (1970). But the range of interest protected by procedural due process is not infinite. This court must look to thenature of the interest at stake. Morrissey v. Brewer, 408 U.S. 471, 481,33 L.Ed.2d 484, 92 S.Ct. 2593 (1972).
"Here the nature of the interest is the right to hold a public office. Can this be said to be encompassed within the terms `liberty' or `property'? We think not.
"It is clear the concept of property is not and was not intended to remain static. Board of Regents v. Roth, supra, 408 U.S. at 571, (Procedural due process as extended well beyond actual ownership of real estate, chattels, or money); Bell v. Burson, 402 U.S. 535, 29 L.Ed.2d 90,91 S.Ct. 1586 (1971), (Driver's license); Goldberg v. Kelly, supra, (Welfare benefits); Connell v. Higginbotham, 403 U.S. 207, 29 L.Ed.2d 418,91 S.Ct. 1772 (1971), (Public Employment); and Standford v. Gas ServiceCompany, 346 F. Supp. 717, 729 (D.Kan. 1972), (Utility services). A general guide was furnished by the Roth court which characterized the type of property interest encompassed within the due process clause as follows:
 "'. . . To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. . . .' [408 U.S. at] 577.
"Clearly, it is only a vested right which cannot be taken away except by due process of law. 16 Am.Jur.2d § 365, p. 694.
"Kansas law clearly establishes the incumbent to a public office enjoys no property or vested interest in public office. In Lynch v. Chase,55 Kan. 367, 40 P. 666, a quo warranto action was brought to determine who was entitled to the office of state penitentiary warden. The court held:
 "`The office of warden of the state penitentiary is created for the public convenience, and the incumbent of the office is the mere agent of the public, who, by virtue of his appointment, acquires the right to exercise the functions of the office and receive the prescribed compensation until the end of his term, or until such time as there may be a resignation or forfeiture of and removal from the office in the manner provided by law; but he ha(d) no property or vested right in such office.' (Emphasis added.) [Lynch, 55 Kan. at 367,] Syl. ¶ 1.
"In the opinion the court said:
 "`Officers are created for the administration of public affairs. When a person is inducted into an office, he thereby becomes empowered to exercise its powers and to perform its duties, not for his, but for the public, benefit. It would be a misnomer and a perversion of terms to say that an incumbent owned an office or had any title to it.' . . ." [Lynch, 55 Kan. at] 372.
"Goodrich v. Mitchell, 68 Kan. 765, 75 P. 1034, involved the validity of the veterans' preference law between rival claimants for the office of superintendent of the Topeka electric-light plant. There the court in upholding the law said:
 "`The general doctrine is that, in the absence of constitutional limitations, the Legislature may prescribe how and by whom offices shall be filled. There is no contract right or property interest in an office, and hence some of the constitutional principles invoked have no application. An office is a public agency, and an officer is a mere agent of the public, entitled to exercise the functions and perform the duties of the office for the public benefit, and not for his own. The main consideration in the selection of officers and agents is the public welfare, and the state, like any other principal, may select its agents, may determine for itself who can best accomplish its purpose, and whose appointment will best subserve the public good. . . .' (Emphasis added.) [Goodrich, 68 Kan. at] 768.
 "'Office-holding is a political privilege, and the matter of appointment to office is not affected by the fourteenth amendment or other provision of the federal constitution, and, as has been said, the power of the legislature is supreme in respect to appointments, save as the constitution has limited it. . . .' (Emphasis added.) [Goodrich, 68 Kan. at] 772."[15]
The principle is applicable when the public office involved is an elected position.[16] "[T]he nature of the relation of a public officer to the public is inconsistent with either a property or a contract right."[17]
"[P]ublic office is not property" that elicits protection under the Due Process Clause.[18] Nor is there a liberty interest in public office.[19] Therefore, there is no life, liberty, and property interest in public office that is protected by due process. The actions of the Lyon County Clerk under the circumstances presented do not result in a due process violation.
Very truly yours,
 CARLA J. STOVALL Kansas Attorney General
 Richard D. Smith Assistant Attorney General
CJS:JLM:RDS:jm
[1] Correspondence, Marcus Goodman, October 29, 2002; Emporia/Lyon County Precinct Boundary Lines, Vernon L. McKinzie, July 8, 2002.See K.S.A. 2001 Supp. 19-204.
[2] Correspondence, Marcus Goodman, October 29, 2002; Emporia/Lyon County Precinct Boundary Lines, Vernon L. McKinzie, July 8, 2002 ("December 15, 2002, Vernon L. and Nancy B. McKinzie received voter notification cards from the Lyon County Clerk listing them in Precinct 10").
[3] Emporia/Lyon County Precinct Boundary Lines, Vernon L. McKinzie, July 8, 2002.
[4] Id.
[5] Correspondence, Marcus Goodman, October 29, 2002; Emporia/Lyon County Precinct Boundary Lines, Vernon L. McKinzie, July 8, 2002.
[6] Correspondence, Marcus Goodman, October 29, 2002.
[7] Correspondence, Marcus Goodman, October 29, 2002; Emporia/Lyon County Precinct Boundary Lines, Vernon L. McKinzie, July 8, 2002.
[8] Emporia/Lyon County Precinct Boundary Lines, Vernon L. McKinzie, July 8, 2002.
[9] Correspondence, Marcus Goodman, October 29, 2002; Emporia/Lyon County Precinct Boundary Lines, Vernon L. McKinzie, July 8, 2002.
[10] Emporia/Lyon County Precinct Boundary Lines, Vernon L. McKinzie, July 8, 2002.
[11] Correspondence, Marcus Goodman, October 29, 2002; Emporia/Lyon County Precinct Boundary Lines, Vernon L. McKinzie, July 8, 2002.See K.S.A. 25-26a04.
[12] Emporia/Lyon County Precinct Boundary Lines, Vernon L. McKinzie, July 8, 2002 ("There was immediate concern that the boundary may have actually changed in 1990 and not been recorded. . . . [T]he prior Clerk may have overlooked it and it could have happened in 1985").
[13] Id.
[14] 217 Kan. 784 (1975).
[15] Leek v. Theis, 217 Kan. 784, 810-12 (1975). See Warren v. Cityof Junction City, Kansas, 176 F. Supp.2d 1118, 1124 (D.Kan. 2001).
[16] Attorney General Opinions No. 2000-5, 97-18, 93-49. See alsoTarrant County v. Ashmore, 635 S.W.2d 417 (Tex. 1982).
[17] Taylor v. Beckham, 178 U.S. 548, 577, 44 L.Ed.2d 1187, 20 S.Ct. 890
(1900).
[18] Id. at 576. See also Snowden v. Hughes, 321 U.S. 1, 7,88 L.Ed.2d 497, 64 S.Ct. 397 (1944).
[19] 26 Am.Jur.2d Elections § 210 (1996).